PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Ft. Worth



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 2 8 2020
CLERK, U.S. DISTRICT COURT
By_____ Deputy

__Laura Shauger #68517-066__
Plaintiff's Name and ID Number

__FMC Carswell__
Place of Confinement

**AMENDED COMPLAINT**

CASE NO. 4:20-cv-890-P
(Clerk will assign the number)

v.

__Warden Carr__
Defendant's Name and Address

__Lt. Anthony__
Defendant's Name and Address

__Lt. Butler__
Defendant's Name and Address
( DO NOT USE "ET AL.")

---

### INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be <u>legibly</u> handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at your prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis*.)

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.  PREVIOUS LAWSUITS:
    A.  Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ___YES___NO
    B.  If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)
        1.  Approximate date of filing lawsuit:_____
        2.  Parties to previous lawsuit:
            Plaintiff(s)_____
            Defendant(s)_____
        3.  Court: (If federal, name the district; if state, name the county.)_____
        4.  Cause number:_____
        5.  Name of judge to whom case was assigned: _____
        6.  Disposition: (Was the case dismissed, appealed, still pending?) _____
        7.  Approximate date of disposition:_____

II.  PLACE OF PRESENT CONFINEMENT: FMC Carswell

III. EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure? ___YES ✓NO

Due to Prejudice Could Not

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV. PARTIES TO THIS SUIT:

A. Name and address of plaintiff: Laura Shauger #68517-066
Federal Medical Center Carswell
P.O. Box 27137   Fort Worth TX 76127

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Warden Carr, P.O. Box 27137 Fort Worth TX 76127 (FMC Carswell)

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Total indifference, violations of constitutional rights, Medical indifference, abuse, cruel & unusual punishment

Defendant #2: Lt. Anthony - FMC Carswell
Cruel, abusive, mental & physical indifference, violations of many constitutional rights

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #3: Lt. Butler - FMC Carswell
P.O. Box 27137

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
* Same as above *

Defendant #4: Ms. Gardner (unit counselor - 2 North)
P.O. Box 27137 Fort Worth TX 76127

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
* Same as above *

Defendant #5: Ms. Cole Rowls (unit manager - 2 North)
P.O. Box 27137 Fort Worth TX 76127

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
* Same as above *

Defendant #6 Dr. Langham (Medical Director)

3

V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

In regaurd to "whom" was involved in all claims that stands as all defendants (to save room Shauger asked court to include each) violations of the 16TH & 8TH amendments - cruel & unusual punishment, total lack of indifference toward welfare, health, mental health safty, CDC guidelines, hygiene needs, food, social distancing & housing. Removal of rights to access legal work, mail, verbal assult & abuse, false information on COVID-19, disregard or testing or treatment of COVID-19

VI. RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Policy changes, relief of staff members, compensation, reduced sentence, immediate release

VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

Laura Shauger, Laura Sobetsky

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

N/A

VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____YES ✓NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (if federal, give the district and division):_____
2. Case number:_____
3. Approximate date sanctions were imposed:_____
4. Have the sanctions been lifted or otherwise satisfied? ____YES ✓NO

4

C. Has any court ever warned or notified you that sanctions could be imposed? ____YES ✓ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning (if federal, give the district and division): _____
2. Case number: _____
3. Approximate date warning was issued: _____

Executed on: __15TH__          _____Laura Shauger_____
　　　　　　　DATE
　　　　　　　　　　　　　　　　(Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this __15TH__ day of __September__, 20 __20__.
　　　　　　(Day)　　　　　　　(month)　　　　　(year)

　　　　　　　　　　　_____Laura Shauger_____
　　　　　　　　　　　　(Signature of Plaintiff)

**WARNING:** Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.

5

# "Facts Cause of Action"

## Violation of 8TH Ammendment

The prison autoritias did not take the inmates needs during a world wide pandemic into consideration and did not provide compatible facilities that met or meet "civilized standards of decency".

1. Deliberate Indifference

2. Extreme and unjustified security measures with lack there of, that led to "negative" COVID-19 costing lives and further suffering.

3. Denial of ANY TREATMENT
   1.) Physical
   2.) Mental

4. Unnecessary and wanton infliction of pain Prision officials must respond to all of your serious medical needs. COVID-19 can not be taken as non-serious and that is how it was and is handled at FMC Carswell.

5. Clothing & Bedding - women were forced to wear the same dirty clothes and bedding for 18 plus days while sick with COVID-19.

6. Failure to allow the inmates to properly dispose of wastes violates the 8TH ammendment. All of the inmates in the unit 2 North were threatened at "gunpoint" over restroom needs and had women bleeding on themselves and urinating on themselves. We were "TOLD" by Lt. Butler, "Its bad enough that you all are breathing" while Lt. Anthony was brandishing fire arms. Lt. Anthony was going into cells waving a shotgun looking weapon asking "Who's getting shot today because somebody is" and also saying and taunting

us "y'all are about to see what I'm all about".

7. No access to hygiene or commissary. Those provided by the institution as well as on commissary since we were not permitted to shop. We also had signs posted everywhere about washing our hands frequently due to COVID-19. Yet on several occassions for several days at a time ran out of hand soap in the restrooms.

8. No hot meals for 23 days and given sack meals referred to as "BAG NASTIES" by Lt. Anthony. On several occassions there was molded lunch meat and raw vegetables that were brown and slimy and when brought to the officers attention were told "we're sorry but this is what we have to give y'all". A sanitary environment is a basic human need that a penal institution MUST provide.

9. Not providing proper PPE per CDC guidelines were given no gloves at all. Staff members in the officers union have also done a lawsuit for being made to work in hazardous conditions & not provided proper PPE. Self-care is something thats not allowed.

10. Over-crowding and social distancing - There are 4 women to approximatly an 8x10 ft. cell that has two sets of brink beds, a desk with attached chair and 4 lockers. Therefore, we cannot social distance and were forced to live in cells with positive COVID-19 inmates. Inmates that were very ill and with a total indifference for other inmates health. Inmates who had tested positive had been living in the same cells with seriously sick inmates which could not be moved due to over crowding.

We have suffered "a mutually enforcing effect that produces the deprivation of a single identifiable Human Needs in order to become unconstitutional in combination."

Document List

1. All 72 declarations on events, treatments, cruelty and inhumane factors which provide dates, times, and names as evidence of facts.

   (see list of names - PROVIDED ATTACHED)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FAITH M. BLAKE, | § |
| (No. 73053-279), | § |
| LA TOYSHA GIBSON, | § |
| (No. 44161-177), | § |
| TIFFANY SNODGRASS, | § |
| (No. 20160-043), | § |
| DELISA WILLIAMS, | § |
| (No. 99950-051), | § |
| TRACIE CARTWRIGHT, | § |
| (No. 67271-019), | § |
| CRYSTAL HAMANN, | § |
| (No. 66795-380), | § |
| MEGAN SCOTT, | § |
| (No. Number), | § |
| ARIEL BISHOP, | § |
| (No. 27411-009), | § |
| TANYA TORRENCE, | § |
| (No. 57104-083), | § |
| CLARA POORBEAR, | § |
| (No. 20937-035), | § |
| GENESIS GONZALEZ, | § |
| (No. 19703-480), | § |
| JULIANA LOURDE, | § |
| (No. 28023-078), | § |
| WINDY PANZO, | § |
| (No. 15967-059), | § |
| SAMANTHA FORSYTHE, | § |
| (No. 31158-064), | § |
| ANDREA BROOKS, | § |
| (No. 28601-380), | § |
| CARRIE ALLRED, | § |
| (No. 31517-045), | § |
| ANGELA REYNOLDS, | § |
| (No. 50702-177), | § |
| VICTORIA MARTINEZ, | § |
| (No. 74453-479), | § |
| MINDY CASAS, | § |
| (No. 57122-177), | § |
| NIKKI GRAHAM, | § |
| (No. 17369-046), | § |

| | |
|---|---|
| ANIKA FOLSOM, | § |
| (No. 32338-064), | § |
| ANGELA CUPIT, | § |
| (No. 49717-177), | § |
| CYNTHIA BAXTER, | § |
| (No. 04314-063), | § |
| VILLISCIA THOMAS, | § |
| (No. 18044-030), | § |
| STEPHANIE WALKER, | § |
| (No. 22305-026), | § |
| GEORGIA GREGG, | § |
| (No. 09233-479), | § |
| DAKOTA GARMANY, | § |
| (No. 53454-074), | § |
| DESIREE WADE, | § |
| (No. 15254-028), | § |
| LAURA SHAUGER, | § |
| (No. 68517-066), | § |
| WENDY ESPINOZA, | § |
| (No. 12293-010), | § |
| TIFFANY MANKIN, | § |
| (No. 14517-078), | § |
| BARBARA COMNEHAN, | § |
| (No. 28121-045), | § |
| SHELLY MIXSON, | § |
| (No. 12079-480, | § |
| AMY TEDDER, | § |
| (No. 14975-480), | § |
| LACI LANDERS, | § |
| (No. 38956-379), | § |
| BRANDI MOORE, | § |
| (No. 37492-480), | § |
| GLORIA BELTRAN, | § |
| (No. 23013-479), | § |
| MIA MITCHELL, | § |
| (No. 26852-078), | § |
| RANEEM HOURANI-MARTINEZ, | § |
| (No. 18540-479), | § |
| KERRI KIETH, | § |
| (No. 45557-177), | § |
| CHRISTINA WILLIAMS, | § |
| (No.20552-035), | § |
| CHRYSTAL LARCADE, | § |
| (No. 10875-010), | § |

| | |
|---|---|
| MARIA RENDON, | § |
| (No. 43141-308), | § |
| JESSICA CHRONISTER, | § |
| (No. 27884-064), | § |
| JESSICA HOLL, | § |
| (No. 55333-177), | § |
| PEDRA CRUZ, | § |
| (No. 34488-479), | § |
| PEGGY CHAFFIN, | § |
| (No. 70653-061), | § |
| KENDRA WARD, | § |
| (No. 53803-177), | § |
| DAVI BAILEY, | § |
| (No. 22215-040), | § |
| SHANA CASTILLO, | § |
| (No. 21287-084), | § |
| SARAH ALRED, | § |
| (No. 25514-479), | § |
| ALEXIS DuMARCE, | § |
| (No. 17635-273), | § |
| JENNIFER BARELA, | § |
| (No. 89655-051), | § |
| JENNIFER GUTRIDGE, | § |
| (No. 40307-408), | § |
| LACEY MOORE, | § |
| (No. 28516-009), | § |
| TESA KEITH, | § |
| (No. 58769-177), | § |
| ERIKE MIJAREZ, | § |
| (No. 99247-380), | § |
| CAROLINA MEDELLIN, | § |
| (No. 98155-051), | § |
| SHAWNA ENLOE, | § |
| (No. 03306-479), | § |
| AMY ROBERTSON, | § |
| (No. 12574-028), | § |
| CANDICE KLEIN, | § |
| (No. 26623-078), | § |
| YVETTE AVILA, | § |
| (No. 66447-298), | § |
| EUGENIA ROWLAND, | § |
| (No.13940-273), | § |

| | |
|---|---|
| MARIA RENDON, | § |
| (No. 43141-308), | § |
| JESSICA CHRONISTER, | § |
| (No. 27884-064), | § |
| JESSICA HOLL, | § |
| (No. 55333-177), | § |
| PEDRA CRUZ, | § |
| (No. 34488-479), | § |
| PEGGY CHAFFIN, | § |
| (No. 70653-061), | § |
| KENDRA WARD, | § |
| (No. 53803-177), | § |
| DAVI BAILEY, | § |
| (No. 22215-040), | § |
| SHANA CASTILLO, | § |
| (No. 21287-084), | § |
| SARAH ALRED, | § |
| (No. 25514-479), | § |
| ALEXIS DuMARCE, | § |
| (No. 17635-273), | § |
| JENNIFER BARELA, | § |
| (No. 89655-051), | § |
| JENNIFER GUTRIDGE, | § |
| (No. 40307-408), | § |
| LACEY MOORE, | § |
| (No. 28516-009), | § |
| TESA KEITH, | § |
| (No. 58769-177), | § |
| ERIKE MIJAREZ, | § |
| (No. 99247-380), | § |
| CAROLINA MEDELLIN, | § |
| (No. 98155-051), | § |
| SHAWNA ENLOE, | § |
| (No. 03306-479), | § |
| AMY ROBERTSON, | § |
| (No. 12574-028), | § |
| CANDICE KLEIN, | § |
| (No. 26623-078), | § |
| YVETTE AVILA, | § |
| (No. 66447-298), | § |
| EUGENIA ROWLAND, | § |
| (No.13940-273), | § |

| | |
|---|---|
| CRYSTAL THOMAS, | § |
| (No. 27832-078), | § |
| KRISTINA KOEHN, | § |
| (No. 15271-062), | § |
| ROSE MYERS, | § |
| (No. 08419-063), | § |
| LAURA HERNANDEZ, | § |
| (No. 38575-379), | § |
| ASHLEY VANDENBURG, | § |
| (No. 77327-061), | § |
| VERONICA VALENZUELA, | § |
| (No. 50918-051), | § |
| CHRISTINA JUAREZ, | § |
| (No. 48416-177), | § |
| MIRANDA FOURNIER, | § |
| (No. 20566-078), | § |
| TARA CHILDRESS, | § |
| (No. 27847-045), | § |
| | § |

2. Startelegram report by:
   Kailey Johnson
   (see exhibits)

*Exh. D1 — Evidence of indifference and extraordinary & compelling reasons*

# Women say they face COVID at Fort Worth prison

*Star Telegram   Ft. Worth Texas*

**BY KALEY JOHNSON**
AUGUST 31, 2020 05:00 AM, UPDATED AUGUST 31, 2020 03:29 PM

Inmates incarcerated at the only federally-run medical prison for women in the country say they have been subjected to a "house of horror" over the past few months.

As of Tuesday, 73 women have signed onto a potential class-action suit against Federal Medical Center Carswell, its warden and several officials and officers.

In more than 200 pages of handwritten testimony, women describe meals of rotten food, negligent medical care and malicious treatment as COVID-19 ran through the prison.

"While the public only hears one side of the major business (BOP and FMC Carswell), the forgotten lives of mothers, daughters, grandmas, granddaughters, sisters all live against every CDC guideline," the lawsuit says.

In response to allegations of mistreatment at FMC Carswell, the Bureau of Prisons sent a statement on its general policies for handling COVID-19. In part of the statement, the BOP said its care and treatment of inmates follows CDC guidelines "with regard to quarantine and isolation procedures, along with providing appropriate treatment."

The statement also said the majority of inmates who tested positive for COVID-19 are asymptomatic.

## PRISON LOCKDOWN

FMC Carswell, located in northwest Fort Worth, has been a medical women's prison since 1994. The facility, which currently houses about 1,300 inmates, has a checkered history of accusations of sexual assault and medical neglect. Most women are serving sentences for drug or white-collar crimes and have medical issues.

In April, a woman incarcerated at Carswell gave birth via cesarean section while on a ventilator at a hospital. Andrea Circle Bear died on April 28. She was the first woman in BOP custody to die from coronavirus — she would not be the last.

The description of what women at FMC Carswell have gone through for the past two months is based on interviews and the more than 200 pages of written testimony from women in Unit 2 North, the first unit to be hit with COVID-19.

On June 30, the first cases of community spread began at Carswell, according to the lawsuit and adjoining testimony. Inmates say a member of staff on the hospital floor was the first person to bring the virus into the prison.

Most of the units in Carswell, such as 2 North, are set up inside a four-story high rise. Cells, which hold four women in a 7-foot-by-10-foot space, are set on the perimeter of a square with a TV room in the center.

While the facility had already been on lockdown — not allowing visitors or daily outdoor time — Carswell shut down the commissary and all activities. For three days, women said, they did not have contact with their families. The TVs were turned off; officers told the women news stations were airing "fake news" about the prison.

For the next four weeks, many of the women would not be able to go outside. Since the commissary was shut down, inmates said, they also went three weeks without being able to buy items such as soap, aspirin or tampons.

The prison stopped serving hot meals. For 19 days, the women said, they received one sack of food a day — inmates called them "bag nasties" — which served as lunch and dinner.

**The vegetables they would give us were brown and dirty. The meat smelt old. The muffins had mold on them. The fruit was rotten. They expected us to hold onto the lunch meat unrefrigerated for hours and eat it for dinner.** Juliana Elaine Lourde

The bag usually consisted of "eight pieces of bread, two slices of lunch meat, an apple or orange, half an onion, half a tomato and a bag of chips," one woman who asked to be identified by her initials M.S., wrote in her testimony. "The vegetables were always brown and soft. My bunkie's bag once contained a fly in the bag."

The prison removed women from the unit who worked in sanitation or food service so they would still be able to work. Women received cloth masks that are washed once a week, and staff put up plastic shower curtains in the open doorway of the women's cells, inmates said.

THREATENED BY OFFICERS

The night COVID-19 fully hit the prison, women in 2 North said they were subjected to malicious treatment from two officers.

On June 30, women were kept in their cells for three hours, and many had to use the bathroom. Some have medical paperwork that allows them to go to the bathroom without permission, and a group started to line up to use the restroom. A staff member hit the panic button and said there was a riot.

Two officers, identified in the suit as Lt. Anthony and Lt. Butler, rushed to the unit. Anthony had a riot gun and Butler carried pepper spray. Anthony waved the gun in the air and said inmates "need to stop testing him," one woman, Ruqayya Abdul-hakim, wrote. Another woman asked Butler what they had done wrong, and he said that "they were breathing, and that was enough."

Adbul-hakim wrote that the men terrified her, triggering her PTSD from a past abusive relationship.

**They threatened to take our mattresses and the food from our lockers. Lt. Anthony called us cows. Lt. Butler, in response to one of the girls asking, 'What did we do wrong?' he said, 'Y'all are breathing; that's wrong enough!'** Ruqayya Abdul-hakim

"I refused to move even though there was blood trickling down my legs. My clothes and linen were both blood stained. I was so humiliated," she wrote.

The lawsuit specifically names Butler and Anthony as defendants.

When asked about this incident and others specifically named in the lawsuit, the BOP said it does not comment on pending litigation.

'NIGHTMARISH CONDITIONS' IN QUARANTINE

As tensions rose at the prison, COVID-19 cases did, too.

The prison started mass testing in early July. On July 6, 51 women and two staff members were positive. By July 21, 510 women in the prison tested positive for the virus.

According to the lawsuit, women who tested positive were pulled from their cells and sent to a quarantine unit called M2. They had to leave most of their items behind, which were transferred to an unlocked room where possessions were quickly stolen.

Faith Blake, the primary plaintiff of the lawsuit, said those women who were quarantined were "treated absolutely horribly."

A woman described her time in M2 in a letter to the Star-Telegram. The Star-Telegram is not using her name because she said she feared retaliation for talking to the media.

The woman said she started showing symptoms of COVID-19 on July 10. She had a cough, shortness of breath, could not taste or smell, and she had nasal discharge. She asked her unit manager to see a doctor, but had to wait 16 hours to be seen by medical staff or be tested.

**As a sanitation worker, I did my job to not only clean but to keep staff and inmates safe by working day and night. I feel my efforts have not been appreciated and I have been punished for being sick.** Tanya Torrence

When she tested positive, she was put in a room with six other women in M2. For six days, the woman stayed in the same clothes. Some women in M2 had been in the same clothes for 19 days, she said. She said two officers at M2 were "wonderful" and "kept the women calm," and someone checked their temperature and pulse oximetry twice a day.

But other women reported "nightmarish conditions" in their rooms. One woman, Windy Panzo, said she was placed in a room with 10 women and "our food is thrown in and kicked in by their feet like we're dogs."

Several women described difficulty getting medical care. A group of inmates had to beat on a door for 15 minutes when a woman's tongue swelled inside her mouth, Panzo wrote.

M.S. wrote that a woman with COVID-19 had a high fever and "staff refused to help her, so she slit her wrists claiming she was going to die in here anyway."

In a letter to the Star-Telegram, Joyce Godwin, a woman incarcerated at FMC Carswell,, expressed succinctly the fear that has taken over the prison: "They call this place a hospital, but it is a house of horror."

## DEATHS AT CARSWELL

Those who tested negative remained in the unit, according to the women in 2 North, which was declared a "positive unit" in July. Women who tested negative "were left in there to become positive," Tara Childress told the Star-Telegram. She, like many women, tested negative multiple times before eventually catching the virus from other inmates.

Veronica Carrera-Perez, 40, was transferred into a cell with a woman who had already tested positive for COVID-19. Within three days, Perez started to complain that her head hurt, she couldn't taste anything and she was throwing up, a woman who was recently released from Carswell told the Star-Telegram. The woman, who was released after she completed her prison sentence, asked that her name not be used out of fear of retaliation from the BOP.

On Aug. 3, Perez died from COVID-19, four months after she applied for and was denied home confinement. In her motion for release, she said her medical conditions consisted of shortness of breath and possibly breast cancer.

Not including Circle Bear and Perez, four other women have died from COVID-19-related causes at Carswell.

- Sandra Kincaid, 69, was the second woman to die on July 14.
- On July 20, 51-year-old Teresa Ely died while on a ventilator.
- Wendy Campbell, 56, died on Aug. 15
- Marie Neba died on Aug. 25

The BOP said in a statement that symptomatic inmates whose condition "rises to the level of acute medical care will be transferred to a hospital setting; either at a local hospital, or at an institution's hospital care unit, if they have one."

> **I'm only 28-years-old. Will I be able to go home healthy to be a mother to my kids? Or will I die behind bars? Genesis Gonzalez**

Carswell is not accredited as a hospital, so inmates are sent to a local hospital.

Carswell is not the only prison to struggle with containing the virus. Across the country, 117 people incarcerated in federal prisons have died from COVID-19, according to the BOP's website. FMC Fort Worth, a men's prison, at one point had the most cases in the country, and FCI Seagoville took that spot in July.

Kevin Ring, executive director of the criminal justice reform group FAMM, said the BOP initially treated prisons like cruise ships — isolated from the world and COVID-19. But prisons are not islands; officers and staff come and go, bringing and taking home the germs of the community.

"Now we've had a domino effect where it hits a state and it hits the prison, and once it gets into the prison, it's wildfire," Ring said. "There's no slowing it down."

RECOVERED?

On Aug. 8, the Carswell warden declared the unit "recovered" and said no one else would be tested for the virus. The last week of July, the commissary re-opened, women started going outside once a week and hot meals were served again.

But women say the virus is not over. On Aug. 25, Blake said women are still showing symptoms of COVID-19, but they are not being tested anymore. Sandra Shoulders, who is an inmate in Unit 1 South, said 34 people were transferred into her unit on Aug. 25 and they had not been tested.

> **I have never felt this helpless and insignificant in my life. The neglect that has happened at this facility has not only put my life and other inmates in danger, but also the staff and officers. Samantha Forsythe**

In a statement, the BOP said the number of positive inmates at Carswell has dropped "as staff have diligently and safely carried out their responsibilities in accordance with CDC guidelines." The BOP said the prison follows CDC guidelines on when inmates should be removed from isolation.

Women also say they still struggle with the emotional toll of the lockdown and how they were treated. Childress, who has anxiety, has not been able to see a counselor for three months.

"They'll have people walk through the units, but that doesn't help," she said. "There is no psychological help or sitting down one-on-one."

Childress, and other women in 2 North's lawsuit, hope to find justice for what they say has been cruel and unusual punishment. She and Blake stressed that they need to find a lawyer who can help them file the suit as a class action.

On Aug. 24, Judge Mark Pittman ordered that the Carswell lawsuit could not be filed as a class action suit, and each woman would need to pay a $400 filing fee and file her own lawsuit separately.

Blake and Childress said that some of them have faced retaliation for signing onto the suit.

"Anytime we try to speak up or get up, we're yanked out, we're isolated," Blake said. "We get put in the SHU. They take our mattresses away from us, so we're sleeping on metal frames. A lot of the women are scared."

She said some of the women in the suit are being transferred to other prisons. The BOP said it has limited facility-to-facility transfers, and other inmate movement. "We cannot prove that it's retaliation, but it's odd," Blake said.

3. Video of actions by Lt. Anthony and Lt. Butler in housing unit 2 North - Counsel and investigators needed to obtain the footage.
   - footage talked about in original complaint.

4. Video footage of actions by Lt. Anthony and Lt. Butler in housing unit 1 South.
   - footage to show use of force and practice of indifference and cruelty.
   - Counsel needed to obtain evidence before it is "missing".
   - shows repeated abuse as a pattern of condoned behavior by FMC Carswell staff members.
   - Per rule 34(A) fed R civ P. evidence will be requested.

5. Exhibits of "phone condoms" submitted to courts in original complaint.

6. Exhibit of mask that were provided to the inmates in original complaint offered in Faith Blake v. Warden Carr. See exhibit in this complaint. 4:20-CV-00807-P. Masks do not meet CDC guidelines and staff members have also sued FMC Carswell for providing proper PPE gear. If they did not provide it to their own staff then how low down on the indifference ladder are the inmates?



Name Laura Shauger
Reg. No. 68517-066
Federal Medical Center, Carswell
P.O. Box 27137
Ft. Worth, TX 76127

7020 1290 0002 1790 6882

CERTIFIED MAIL

U.S. District Court
Office of the Clerk
501 W. Tenth St.
Room 310
Fort Worth, TX 76102

SEP 28 2020
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS